IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOE CHAMPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. **09-379-MJR-CJP** |
| **Dr. MARVIN POWERS, and** | ) |
| **TERRY CALIPER**, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| Defendants. | ) |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Plaintiff Joe Champs is an inmate in the custody of the Illinois Department of Corrections. He filed suit under 42 U.S.C. §1983, alleging that his Eighth Amendment rights were violated by defendants' deliberate indifference to his serious medical needs. All parties have filed motions for summary judgment. These motions are now before the Court:

- Defendant Terry Caliper's Amended Motion for Summary Judgment (Qualified Immunity **(Doc. 40)**;

- Plaintiff's Motion for Summary Judgment **(Doc. 62)**.

- Defendant Caliper's Second Motion for Summary Judgment **(Doc. 70)**; and

- Defendant Powers' Motion for Summary Judgment **(Doc. 78).**

Responses have been filed to each motion. Plaintiff responded to **Doc. 40** at **Doc. 43**. Defendants responded to plaintiff's motion at **Docs. 78, 79 & 81.** Plaintiff responded to **Doc. 70** at **Doc. 91.** Plaintiff responded to **Doc. 78** at **Doc. 95**.

The Court notes that defendants served upon the pro se plaintiff the notice required by

*Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982).  (Docs. 37, 72 & 76).

### Nature of Plaintiff's Claims

Plaintiff's claim arises out of alleged deliberate indifference to his need for medical treatment for knee pain while incarcerated at Tamms Correctional Center.  In his First Amended Complaint, **Doc. 8**, he alleges that defendant Powers is the Medical Director and that defendant Caliper is the Administrator of the Health Care Unit at Tamms.  He alleges that he injured his knee before he was transferred to Tamms.  He further alleges that he has complained to defendants numerous times about his knee, but they have refused to give him treatment.  See, order on preliminary review, **Doc. 27**.

### Grounds for Summary Judgment

**1.     Defendant Caliper's Amended Motion for Summary Judgment (Doc. 40)**

Defendant Terry Caliper is a registered nurse and was the administrator of the health care unit at Tamms from the date of plaintiff's arrival, December 16, 2005, through March, 2009.  In **Doc. 40**, she argues that she is entitled to qualified immunity on the grounds that plaintiff cannot show that she violated his constitutional rights because he has been under the care of a doctor, and, as a nurse and health care administrator, she is not authorized to prescribe treatment and cannot override a physician's decisions about treatment.

**2.     Defendant Caliper's Second Motion for Summary Judgment (Doc. 70)**

In her second motion, Caliper argues that the two year statute of limitations bars plaintiff's claims for events which occurred before April 8, 2007.[1]  She also argues that plaintiff cannot show that she violated his constitutional rights for the reasons advanced in **Doc. 40**, above.

---

[1] Plaintiff filed suit in state court on April 8, 2009.  Defendants removed the case.

2

**3.**     **Plaintiff's Motion for Summary Judgment (Doc. 62)**

Plaintiff argues that his medical records establish that, on July 14, 2005, an MRI of his right knee showed the presence of an ACL tear, a complex lateral meniscus tear, old MCL and LCL sprains, chondromalacia, bursitis, effusion and a Baker's cyst. He argues that the medical records establish that he has requested medical treatment, including surgery, numerous times, but defendants have failed and refused to give him the treatment he needs. In addition to the medical records, he relies on the affidavits of two other inmates. These affidavits contain the identical assertions, i.e., that the affiant witnessed both defendants refuse plaintiff's requests for treatment for his knee.

**4.**     **Defendant Powers' Motion for Summary Judgment (Doc. 78)**

Dr. Powers argues that he is entitled to summary judgment because the record reflects that he attended to plaintiff's complaints about his knee and rendered appropriate treatment. He argues that, at most, plaintiff can establish only a disagreement about the proper course of treatment, which does not rise to the level of a constitutional claim.

**Standard for Summary Judgment**

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see** *Celotex Corp. v. Catrett*, **106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See,** *Anderson v. Liberty Lobby, Inc.*, **106 S.Ct. 2505, 2513-14 (1986).** However, once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v.*

3

*City of Fort Wayne*, **91 F.3d 922, 931 (7th Cir. 1996)**

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage. "Summary judgment proceedings provide the 'put up or shut up' moment in litigation." *Everroad v. Scott Truck Systems, Inc.*, **604 F.3d 471, 476 (7th Cir. 2010).** Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, **106 S.Ct. at 2512.** Thus, only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment. Disputes as to irrelevant or unnecessary facts do not preclude summary judgment. *Clifton v. Schafer*, **969 F.2d 278, 281 (7th Cir. 1992).**

Where, as here, cross-motions for summary judgment are filed, "we look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Diaz v. Prudential Ins. Co. of America*, **499 F.3d 540, 643 (7th Cir. 2007) (quoting *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. *Duncan v.Duckworth*, **644 F.2d 653, 655 (7th Cir.1981).**

## Analysis

In order to prevail on his constitutional claim, plaintiff must satisfy the two-part test

4

enunciated in *Farmer v. Brennan*, **114 S.Ct. 1970 (1994)**. The test has both an objective and a subjective component. That is, plaintiff must show (1) his condition was objectively serious, and (2) the defendant acted with deliberate indifference, which is a subjective standard. *Reed v. McBride*, **178 F. 3d 849, 852 (7th Cir. 1999).**

Liability under 42 U.S.C. §1983 is personal; there is no liability unless the defendant "caused or participated" in the deprivation of a constitutional right. *Vance v. Peters*, **97 F.3d 987, 991 (7th Cir. 1996)**. Thus, the two-prong *Farmer* test must be satisfied as to each defendant.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, **97 S.Ct. 285, 291 (1976)**. It does not, however, entitle a prison inmate to "unqualified access to healthcare" or to the best care possible. Prison inmates are entitled only to "adequate medical care." *Johnson v. Doughty*, **433 F.3d 1001, 1013 (7th Cir. 2006)**. It is proper to consider the "cost of treatment alternatives" in "determining what constitutes adequate, minimum-level medical care." *Id.* See also, *Maggert v. Hanks*, **131 F.3d 670, 671-672 (7th Cir. 1997)**(Prisoner "is entitled only to minimum care.").

It is important to note that a constitutional claim requires more than a showing of negligence or medical malpractice. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, **97 S. Ct. at 292.** See also, *Perkins v. Lawson*, **312 F.3d 872, 875 (7th Cir. 2002) (stating that even gross negligence does not constitute deliberate indifference)**.

The Court will analyze each motion in turn. However, as each motion relies on plaintiff's medical records, the analysis will begin with a review of the relevant information

established by the medical records. Except where noted, the following references are to the copy of the records attached to defendant Powers' motion, **Doc. 78**, Ex. 2 & 3.

On July 24, 2005, while plaintiff was housed at Stateville Correctional Center, an MRI of his right knee was done at University of Illinois at Chicago Medical Center. The findings were (1) subacute or remote high grade partial thickness ACL tear or full thickness ACL tear; (2) complex lateral meniscal tear; (3) old grade 2 MCL and LCL sprains; (4) superficial grade 3 chondromalacia; (5) bursitis; and (6) effusion and Baker's cyst. See, **Doc. 63**, Ex. A, pp. 3-4.

Plaintiff had an orthopedic consultation at the University of Illinois at Chicago Medical Center on August 9, 2005. The orthopedic surgeon recommended that he be treated with physical therapy. The medical director at Stateville approved the recommendation. **Doc. 78**, Ex. 3, p. 48.

Plaintiff was given physical therapy for his knee at Stateville from October through December, 2005. Ex. 3, pp. 37-43. A physical therapist at Stateville opined that plaintiff needed surgery. Ex. 3, p. 41. The records do not contain any recommendation by a physician that surgery should be done.

On December 15, 2005, Champs was transferred to Tamms Correctional Center. Ex. 3, p. 44. The Health Status Transfer Summary completed by health care staff at Stateville notes that he suffered from asthma and depression, but does not list any knee problems. Ex. 3, p. 44. A reception screening was done by a Nurse Cook at Tamms on December 16, 2005. The record states that plaintiff was taking Trazadone and Prozac, and that his vital signs were normal. No complaints were noted. Ex. 3, p. 44. Due to his history of depression, plaintiff was placed on 23 hour psychiatric observation. Ex. 3, p. 45.

The Tamms medical records first document a complaint of knee pain on January 18,

2006. Nurse Hart noted a history of "torn cartilage and ligament" since December, 2005. Ex. 3, p. 26. Her examination showed no swelling, redness, tenderness, or limited range of motion. She referred him for an examination by a doctor. Id.

Dr. Powers saw plaintiff on January 19, 2006. He noted that plaintiff complained of right knee swelling and hurting and "everything." Ex. 3, p. 27. On examination, there was no swelling, no tenderness to palpation, and good range of motion. Dr. Powers reviewed plaintiff's medical records and noted the results of the previous MRI at University of Illinois at Chicago. He gave plaintiff instruction on proper movement techniques to avoid injury and prescribed Motrin for pain. Id.

On May 15, 2007, plaintiff complained of swelling in both legs, which could not be corroborated by Dr. Powers on examination. Ex. 3, p. 28.

On June 1, 2007, plaintiff was examined by an LPN after he complained that he hurt his knee while doing jumping jacks. She noted no swelling, deformity or restriction of range of motion, and did not enter a referral to the doctor. Ex. 3, p. 29.

On July 20, 2007, plaintiff complained to a nurse that his right knee starting hurting again after he fell in the shower. The nurse noted no swelling, bruising or limited range of motion, but did find tenderness on the inner aspect of the knee. Plaintiff told the nurse that Motrin helped. He was referred for the next available physician call line on July 25, 2007. Ex. 3, p. 30.

Dr. Powers saw plaintiff for knee pain on July 25, 2007, and noted that plaintiff told him he had torn the cartilage in his knee while running years ago, possibly in 1996. There was no swelling and good stability. Plaintiff reported that Motrin helped, he was walking well and going to yard. Ex. 3, p. 32. On August 6, 2007, plaintiff complained to Dr. Powers that, in

addition to right knee pain, he had low back pain. Again, there was no swelling, crepitus or instability of the knee. Dr. Powers gave plaintiff Motrin and Robaxin, and instructed plaintiff to stop exercising until his back felt better. Ex. 3, p. 33. The medications were refilled on August 30, 2007. Ex. 3, p. 34.

Thereafter, Dr. Powers saw plaintiff twelve more times through December 14, 2009. On most of these visits, plaintiff complained of right knee pain. Dr. Powers never documented any swelling, instability, crepitus, or limitation of the range of motion of the knee. See, Ex. 2, pp. 4-25.

**1.      Caliper's Amended and Second Motions for Summary Judgment, Docs. 40 & 70.**

In her Amended Motion for Summary Judgment, Terry Caliper argues that she is entitled to qualified immunity because the facts alleged by plaintiff do not demonstrate that Caliper violated his constitutional rights. In her Second Motion for Summary Judgment, she argues that she is entitled to judgment because the record establishes that she was not deliberately indifference to plaintiff's serious medical needs. Both motions should be granted.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, **102 S.Ct. 2727, 2738 (1982)**.

*Saucier v. Katz*, **121 S. Ct. 2151 (2001)** required that a court follow a two-step process in analyzing a claim of qualified immunity. First, the court must determine whether the facts as alleged by plaintiff show a violation of a constitutional right. If so, the court must then determine whether the right was "clearly established" at the time of the defendant's actions. *Saucier*, **121 St. Ct. at 2156.** However, the court is no longer bound to proceed in that manner.

In *Pearson v. Callahan*, **129 S.Ct. 808, 818 (2009)**, the Supreme Court held that the *Saucier* sequence is no longer mandatory. Rather, a court may use its discretion in determining which of the two prongs of the test should be analyzed first.

Mr. Champs's medical records establish that Caliper knew that plaintiff was under the care of Dr. Powers for his knee complaints. The records also establish that Champs wrote a letter to Caliper on August 2, 2007, in which he expressed his dissatisfaction with the treatment he was receiving. In response, she conducted a review of his records, determined that Dr. Powers was seeing Champs for his knee complaints, and referred him to be seen by Dr. Powers again. **Doc. 36, Ex. 1, pp. 3-4.** Plaintiff was seen by Dr. Powers on Caliper's referral on August 6, 2007. **Doc. 36, Ex. 1, p. 5.**

In January, 2008, Caliper wrote a note in plaintiff's medical records documenting the fact that she had reviewed the records and responded to a grievance in which plaintiff complained that he needed surgery. She again arranged for him to be seen by Dr. Powers. **Doc. 36, Ex. 1, p. 8.**

In response to the motion, plaintiff essentially repeats the allegations of his complaint. He argues that she is a nurse and that, as health care unit administrator, she has a duty to see that he receives adequate medical care. **See, Doc. 43.**

Under the recent case of *Johnson v. Doughty*, **433 F.3d 1001 (7th Cir. 2006)**, the motion should be granted. There, the Seventh Circuit held in similar circumstances that a grievance counselor, the warden, a member of the administrative review board, and the director of the IDOC were all entitled to summary judgment on the plaintiff's deliberate indifference claim. The Seventh Circuit held that the grievance counselor who "investigated the situation, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the

medical professionals' opinions" was not deliberately indifferent. ***Johnson*, 433 F.3d at 1010.** The other defendants were also entitled to summary judgment because they "reasonably relied" on the fact that the inmate was being seen by the medical staff. ***Johnson*, 433 F.3d at 1011.** The court in ***Johnson*** also affirmed judgment after a bench trial in favor of the health care unit administrator where he investigated the situation, referred the inmate to a doctor, and reasonably relied on the doctor's opinion. ***Johnson*, 433 F.3d at 1015.**

In ***Johnson***, the plaintiff alleged that the defendants ignored his complaints of pain associated with a hernia, and were deliberately indifferent to his need for surgery. The court noted that the defendants could not be expected to determine whether the plaintiff actually needed surgery, and were entitled to rely on the opinions of the doctors who were treating the plaintiff. "Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals." ***Johnson*, 433 F.3d at 1011 (internal citation omitted.)**

The facts regarding Caliper's liability are similar to the facts in ***Johnson***. Plaintiff's medical situation was being addressed Dr. Powers. Plaintiff takes the position that, because he was dissatisfied with Dr. Powers' treatment, Caliper should have arranged for him to be seen by a different doctor. However, there is no clearly established constitutional responsibility for a health care unit administrator to provide an opportunity for a second opinion to an inmate dissatisfied with the prison doctor's treatment.

Caliper has demonstrated that she is entitled to qualified immunity. Therefore, her Amended Motion for Summary Judgment **(Doc. 40)** should be granted.

If the recommendation as to **Doc. 40** is not adopted, the Court must consider Caliper's Second Motion for Summary Judgment, **Doc. 70**. Defendant's first argument is that the two

year statute of limitations bars plaintiff's claims for events which occurred before April 8, 2007. This argument ignores the fact that the statute of limitations in a Section 1983 case is tolled during the period of time that the inmate is pursuing exhaustion. **See,** *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). Because defendant has not demonstrated that the statute of limitations bars plaintiff's claims against her, the motion should be denied in that respect.

Caliper's Second Motion also argues that she is entitled to judgment because the record establishes that she did not violate plaintiff's constitutional rights. The argument here is similar to the argument made in **Doc. 40.**

Defendants' Second Motion is supported by plaintiff's responses to defendant's requests to admit, plaintiff's answers to defendant's interrogatories, and a partial transcript of plaintiff's deposition, attached to **Doc. 71.** These exhibits further bolster Caliper's position that she did not violate plaintiff's constitutional rights. Plaintiff admits that Caliper was the health care unit administrator, and she is not a physician. Ex. 1, p. 2. Plaintiff testified in his deposition that his position is that Caliper was his "advocate" and was supposed to arrange for him to be seen at an outside hospital or to advocate his position with Dr. Powers. Ex. 1, p. 18. However, the law is the opposite; because plaintiff was under Dr. Powers' care, and that care was not obviously inappropriate or inadequate, Caliper's failure to arrange for a different course of treatment did not violate the Constitution. *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006),

**2.     Powers' Motion for Summary Judgment (Doc. 78)**

Dr. Powers' affidavit is attached to **Doc. 78** as Ex. 1. He points out that plaintiff had a consultation with a doctor from the orthopedics department at the University of Illinois-Chicago Hospital in 2005, following the MRI. That doctor did not recommend surgery. Ex. 1, ¶¶ 71-72. Dr. Powers explains that not all tears to the ACL or meniscus require surgery. He states,

"Surgery may be recommended or offered to those individuals who have specific work requirements and/or those individuals who are very active in sports professionally or participate in sports sufficiently to the point that surgery is the only answer." Ex. 1, ¶8. He states that Mr. Champs does not fall into any of these categories, and that surgery is not medically necessary for him. Ex. 1, ¶9. He describes the numerous visits during which he examined plaintiff's knee, his observations, and the treatment provided. Ex. 1, ¶¶6, 11-17, 23-46. Dr. Powers states that plaintiff's knee problem is "something that he may have to deal with for the rest of his life." Ex. 1, ¶18. Further, he cautions that there is no guarantee that surgery would provide the result that Mr. Champs seeks. Ex. 1, ¶20.

In response to the motion, plaintiff argues that he does, in fact, need surgery on his knee. As support, he points to the note written by the physical therapist at Stateville. Doc. 95, ¶74. Plaintiff does not claim that any doctor ever recommended surgery. He argues that Dr. Powers' affidavit is just his "personal" opinion, rather than a "medical" opinion. This is obviously incorrect, as Dr. Powers states in his affidavit several times that, in his opinion, surgery for Mr. Champs is "not medically necessary." See, Doc. 78, Ex. 1, ¶¶9, 10. He also suggests that Dr. Powers' refusal to send him for an outside evaluation because of the costs involved, but offers no evidence to support this suggestion. An unsupported allegation is insufficient to defeat summary judgment. "Summary judgment proceedings provide the 'put up or shut up' moment in litigation." ***Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 476 (7th Cir. 2010).**

In sum, the record establishes that, rather than being deliberately indifferent to plaintiff's knee problem, Dr. Powers saw him on numerous visits and pursued conservative treatment. Plaintiff disagrees with that course of treatment, but such a disagreement as to the proper course of treatment does not rise to the level of a constitutional violation. "[T]he Constitution is not a

medical code that mandates specific medical treatment." ***Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)**. The determination of whether a patient needs surgery is a medical decision. A "deliberate decision by a doctor to treat a medical need in a particular manner" is not deliberate indifference. ***Snipes v. DeTella*, 95 at 591.** The Constitution does not guarantee that an inmate will receive the treatment of his choosing. ***Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).**

Even if plaintiff could demonstrate that Dr. Powers was wrong in his treatment recommendations, he would not make a case. Medical malpractice does not violate the Constitution. **See *Estelle*, 97 S. Ct. at 292; *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (stating that even gross negligence does not constitute deliberate indifference)**. In evaluating a claim of deliberate indifference, the court does <u>not</u> evaluate the defendant's conduct in light of what a "reasonable doctor" would have done. ***Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).** As the Seventh Circuit has stated, "A doctor might be careless in not appreciating the need to investigate several possible explanations for a particular prisoner's symptoms, and this carelessness may constitute malpractice. But malpractice alone is not enough to meet the constitutional standard." ***Id*.**

### 3.     Plaintiff's Motion for Summary Judgment, Doc. 62

In accordance with the analysis of defendants' motions, it is clear that plaintiff's motion should be denied.

Mr. Champs argues that he is entitled to summary judgment as to both defendants because they have refused to give him the medical treatment which he has requested. He asserts that the record establishes that he needs surgery on his knee. In order to establish that he needs surgery, he relies on the fact that surgery was recommended by a physical therapist. See, Doc. 63, ¶21.

Plaintiff's motion relies heavily on his view that there is no dispute as to the facts. In a sense, he is correct. However, because the facts fail to demonstrate that plaintiff is entitled to judgment, his motion should be denied. Even in the absence of a dispute as to the material facts, the moving party must demonstrate that it is entitled to judgment as a matter of law. **See, Rule 56(c)(2);** *Johnson v. Gudmundsson*, **35 F.3d 1104, 1112 (7th Cir. 1994).** In this case, the facts demonstrate that both defendants are entitled to judgment against plaintiff.

### Recommendations

This Court recommends that Defendant Terry Caliper's Amended Motion for Summary Judgment **(Doc. 40)**, Defendant Caliper's Second Motion for Summary Judgment **(Doc. 70)**, and Defendant Powers' Motion for Summary Judgment **(Doc. 78)** be **GRANTED**. This Court also recommends that Plaintiff's Motion for Summary Judgment **(Doc. 62)** be **DENIED**.

If these recommendations are adopted in their entirety, no claims will remain pending.

**Objections to this Report and Recommendation must be filed on or before November 22, 2010**

Submitted: November 3, 2010.

s/ Clifford J. Proud
CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE