IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOE CHAMPS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. **09-cv-379-MJR** |
| | ) | |
| **DR. MARVIN POWERS, and** | ) | |
| **TERRY CALIPER**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Joe Champs, an inmate in the Tamms Correctional Center ("Tamms"), brings this action pursuant to 42 U.S.C. § 1983, for deprivations of his constitutional rights. At this juncture, Champs' First Amended Complaint (Doc. 8) controls, and the only remaining defendants are Dr. Marvin Powers and Terry Caliper. *See* **Doc. 27.** Dr. Powers is Champs' treating physician and the Medical Director at Tamms; Terry Caliper, a registered nurse by trade, is the Administrator of the Health Care Unit at Tamms. Put succinctly, Champs alleges that Powers and Caliper have been deliberately indifferent to his serious medical needs– a knee injury and resulting pain– in violation of the Eighth Amendment. Before the Court are two motions for summary judgment filed by Caliper (Docs. 40 and 70), Dr. Powers' motion for summary judgment (Doc. 78), and Plaintiff Champs' own motion for summary judgment (Doc. 62). Caliper argues that she is entitled to qualified immunity, and Caliper and Powers both contend they are entitled to summary judgment on the merits of the case. Champs also asserts that he is entitled to summary judgment based on the undisputed facts in the record.

1

United States Magistrate Judge Clifford J. Proud issued a Report and Recommendation (Doc. 96), recommending that Caliper's Amended Motion for Summary Judgment (Doc. 40) be granted because, in accordance with *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), Caliper was entitled to qualified immunity; in the alternative, it was recommended that Caliper's Second Motion for Summary Judgment (Doc. 70) be granted, as *Johnson v. Doughty* again controls on the merits of the case. Judge Proud also recommends that Defendant Powers' Motion for Summary Judgment (Doc. 78) be granted, in that the evidence fails to rise to the level necessary to establish deliberate indifference. Concluding that Caliper and Powers are entitled to summary judgment on the merits of the case, Judge Proud further recommends that Champs' Motion for Summary Judgment (Doc. 62) be denied, because Plaintiff Champs has failed to adequately substantiate his claims, or otherwise present a question of fact for trial.

Plaintiff Champs objects to the Report and Recommendation "in its entirety" (Doc. 101). However, upon closer reading, Champs does not take issue with the factual recitation, *per se*, only with Judge Proud's legal conclusions. Champs offers nine pages of legal precedents and principles of law regarding deliberate indifference to serious medical needs (Doc. 101, pp. 6-15), all of which are consistent with the legal principles upon which Judge Proud relied. Champs' arguments contain little or nothing new, or specific to Judge Proud's analysis and conclusions.

Relative to Defendant Caliper, Champs argues that qualified immunity is inappropriate in this scenario because, as a nurse and the Administrator of the Health Care Unit, Caliper had a duty to recognize that Champs was not receiving adequate medical care and to take action. Plaintiff also observes that Caliper is not an orthopedic specialist, implying that she was incompetent to realize he was receiving inadequate care. With respect to Defendant Powers,

2

Champs reiterates his position that the evidence establishes the Eighth Amendment claim. Champs further asserts that Dr. Powers is not a surgeon or orthopedic specialist, inferring that Powers is incompetent to assess and treat Champs' knee injury.

In response to Champs' objections, Defendant Caliper contends that Champs has offered nothing more than his own opinions, without foundation or evidentiary support (Doc. 105). In reply, Champs again asserts that the medical records speak for themselves and demonstrate Dr. Powers' incompetence (Doc. 106). In addition, Champs distinguishes *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), upon which Judge Proud relies, by observing that *Johnson* did not involve a trained nurse who, as Administrator of the Health Care Unit, was charged with ensuring that inmates receive proper medical care.

Accordingly, the Court will undertake *de novo* review of the portions of the Report to which specific objection was made. **28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Southern District of Illinois Local Rule 73.1(b);** *Govas v. Chalmers*, **965 F.2d 298, 301 (7th Cir. 1992)**. The Court may accept, reject or modify the recommended decision, or recommit the matter to the Magistrate Judge with instructions. **Fed.R.Civ.P. 72(b); Local Rule 73.1(b);** *Willis v. Caterpillar, Inc.*, **199 F.3d 902, 904 (7th Cir. 1999).**

### 1. Controlling Legal Principles

#### A. The Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, **553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)).** A genuine issue

of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).** In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." ***Scott v. Harris*, 550 U.S. 372, 380 (2007).** Further, the party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).** After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." ***Anderson*, 477 at 255 (quotation omitted); see also Fed. R. Civ. P. 56(e)(2) (requiring adverse party to "set out specific facts").** Finally, at summary judgment, the "court's role is not to evaluate the weight of the evidence, judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." ***National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).**

### B. Deliberate Indifference

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." ***Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).** In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and secondly, that the "prison officials acted with a sufficiently culpable state of mind." ***Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotations omitted);** *see also Williams v. Liefer*, **491 F.3d 710, 714 (7th Cir. 2007).** With respect to the objective component of this inquiry, "[a] 'serious' medical

4

need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." ***Foelker v. Outagamie County*, 394 F.3d 510, 512-513 (7th Cir. 2005).**

A prisoner also must show that "prison officials acted with a sufficiently culpable state of mind" —namely deliberate indifference, a subjective standard. ***Greeno*, 414 F.3d 645 at 653.** "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." ***Duckworth v. Franzen*, 780 F.2d 645, 652-653 (7th Cir. 1985).** Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. ***Id*. at 653*; Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).** Put another way, a plaintiff must demonstrate that a prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that the official actually drew the inference, and then disregarded this risk. ***Greeno*, 414 F.3d at 653 (internal quotations omitted).** While a series of negligent acts can evince a prison official's awareness of an inmate's exposure to a serious risk, "showing deliberate indifference through a pattern of neglect entails a heavy burden." ***Zentmyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000)(quoting *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir.1999)).**

Inmates are not entitled to demand specific treatment or even "to the best care possible." ***Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [an inmate] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").** Moreover, "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally

5

insufficient." ***Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006);** *See also **Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996).** However, "a medical professional's erroneous treatment decision can lead to deliberate indifference liability if the decision was made in the absence of professional judgment." ***Johnson*, 433 F.3d at 1013;** *see also **Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) ("A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances.").** At bottom, demonstrating deliberate indifference requires inmates to clear a high threshold. ***Dunigan ex rel. Nyman*, 165 F.3d at 590.**

*Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), the cornerstone of the Report and Recommendation, can be summarized as follows. Plaintiff Johnson, an inmate, sued multiple prison officials, including the Administrator of Health Care and three prison doctors, for deliberate indifference to his hernia. Johnson believed his condition required surgery, but prison doctors treated him with non-surgical means, leaving him in pain. All of the prison officials, except the Administrator of Health Care, were granted summary judgment because, not being medical professionals, they had taken the plaintiff's complaints seriously and had reasonably relied upon doctors to treat the plaintiff. *Johnson*, 433 F.3d at 1010-1011. The Administrator of Health Care subsequently resolved lingering factual disputes and was granted judgment on the same legal grounds, and because there was no evidence that he enforced a financial policy that dictated doctors' treatment decisions. *Id.* at 1014-1015. After a bench trial, the prison doctors were all found not liable, because the evidence did not show that they were swayed by financial considerations; rather, their treatment decisions were based on their medical judgment. *Id. at 114.*

6

### C. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* **457 U.S. 800 (1982).**

*Saucier v. Katz,* 533 U.S. 194 (2001), requires that a court follow a two-step process in analyzing a claim of qualified immunity. First, the court must determine whether the facts as alleged by plaintiff show a violation of a constitutional right. If so, the court must then determine whether the right was "clearly established" at the time of the defendant's actions. *Saucier,* **533 U.S. at 201.** However, the Court is no longer bound to proceed in that manner. *Pearson v. Callahan,* 555 U.S. 223, __, 129 S.Ct. 808, 818 (2009), holds that the *Saucier* sequence is no longer mandatory. Rather, a court may use its discretion in determining which of the two prongs of the test should be analyzed first.

### 2. Analysis

In light of the foregoing legal principles, the question is whether, when viewing the record in the light most favorable to Champs, a reasonable trier of fact *could* conclude that Powers and Caliper were subjectively aware of Champs' serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).**

There is no material dispute regarding Champs' medical condition, or that it constitutes a serious medical need. Because Champs has not specified any error, omission or mistake in the factual synopsis in the Report and Recommendation, the Court will reiterate and rely upon that synopsis.

On July 24, 2005, while plaintiff was housed at Stateville Correctional Center, an MRI of his right knee was done at University of Illinois at Chicago Medical Center. The findings were(1) subacute or remote high grade partial thickness ACL tear or full thickness ACL tear; (2)complex lateral meniscal tear; (3) old grade 2 MCL and LCL sprains; (4) superficial grade 3chondromalacia; (5) bursitis; and (6) effusion and Baker's cyst. See, Doc. 63, Ex. A, pp. 3-4.

Plaintiff had an orthopedic consultation at the University of Illinois at Chicago Medical Center on August 9, 2005. The orthopedic surgeon recommended that he be treated with physical therapy. The medical director at Stateville approved the recommendation. Doc. 78, Ex.3, p. 48.

Plaintiff was given physical therapy for his knee at Stateville from October through December, 2005. Ex. 3, pp. 37-43. A physical therapist at Stateville opined that plaintiff needed surgery. Ex. 3, p. 41. The records do not contain any recommendation by a physician that surgery should be done.

On December 15, 2005, Champs was transferred to Tamms Correctional Center. Ex. 3,p. 44. The Health Status Transfer Summary completed by health care staff at Stateville notes that he suffered from asthma and depression, but does not list any knee problems. Ex. 3, p. 44. A reception screening was done by a Nurse Cook at Tamms on December 16, 2005. The record states that plaintiff was taking Trazadone and Prozac, and that his vital signs were normal. No complaints were noted. Ex. 3, p. 44. Due to his history of depression, plaintiff was placed on 23hour psychiatric observation. Ex. 3, p. 45.

The Tamms medical records first document a complaint of knee pain on January 18, 2006. Nurse Hart noted a history of "torn cartilage and ligament" since December, 2005. Ex. 3, p. 26. Her examination showed no swelling, redness, tenderness, or limited range of motion. She referred him for an examination by a doctor. Id.

Dr. Powers saw plaintiff on January 19, 2006. He noted that plaintiff complained of right knee swelling and hurting and "everything." Ex. 3, p. 27. On examination, there was no swelling, no tenderness to palpation, and good range of motion. Dr. Powers reviewed plaintiff's medical records and noted the results of the previous MRI at University of Illinois at Chicago. He gave plaintiff instruction on proper movement techniques to avoid injury and prescribed Motrin for pain. Id.

On May 15, 2007, plaintiff complained of swelling in both

8

> legs, which could not be corroborated by Dr. Powers on examination. Ex. 3, p. 28.
>
> On June 1, 2007, plaintiff was examined by an LPN after he complained that he hurt his knee while doing jumping jacks. She noted no swelling, deformity or restriction of range of motion, and did not enter a referral to the doctor. Ex. 3, p. 29.
>
> On July 20, 2007, plaintiff complained to a nurse that his right knee starting hurting again after he fell in the shower. The nurse noted no swelling, bruising or limited range of motion, but did find tenderness on the inner aspect of the knee. Plaintiff told the nurse that Motrin helped. He was referred for the next available physician call line on July 25, 2007. Ex. 3, p. 30.
>
> Dr. Powers saw plaintiff for knee pain on July 25, 2007, and noted that plaintiff told him he had torn the cartilage in his knee while running years ago, possibly in 1996. There was no swelling and good stability. Plaintiff reported that Motrin helped, he was walking well and going to yard. Ex. 3, p. 32. On August 6, 2007, plaintiff complained to Dr. Powers that, in addition to right knee pain, he had low back pain. Again, there was no swelling, crepitus or instability of the knee. Dr. Powers gave plaintiff Motrin and Robaxin, and instructed plaintiff to stop exercising until his back felt better. Ex. 3, p. 33. The medications were refilled on August 30, 2007. Ex. 3, p. 34.
>
> Thereafter, Dr. Powers saw plaintiff twelve more times through December 14, 2009. On most of these visits, plaintiff complained of right knee pain. Dr. Powers never documented any swelling, instability, crepitus, or limitation of the range of motion of the knee. See, Ex. 2, pp. 4-25.

**Doc. 96, pp. 6-8.**

### A. Terry Caliper

In her Amended Motion for Summary Judgment (Doc. 4), Terry Caliper argues that she is entitled to qualified immunity because the facts alleged by Plaintiff Champs do not demonstrate that Caliper violated his constitutional rights. In her Second Motion for Summary Judgment (Doc. 70), she argues that she is entitled to judgment because the record establishes

9

that she was not deliberately indifference to Champs' serious medical needs. Both motions are well taken.

*Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), controls, regardless of the fact that Caliper is a nurse. Caliper acted upon Champs' complaints about how he was being treated by reviewing his records and referring him to Dr. Powers (*see* Doc. 36, Ex. 1, pp. 3-5). As Champs himself points out, Caliper is a nurse by training, not a physician or specialist in orthopedics. Despite Champs' unsupported non-expert opinion to the contrary, this is not a scenario so obvious that a particular course of treatment was called for, like the scenarios discussed in *Johnson*: a broken leg that must be set, or the person not breathing who obviously needs CPR. **Johnson, 433 F.3d at 1013.** Champs' knee required a nuanced medical decision. Therefore, Caliper, even with her training as a nurse is entitled to rely on the doctors treating Champs (at the prison and at the University of Illinois-Chicago), and their superior medical training. Under those circumstances, Champs had no right to demand specific treatment or a referral to another doctor. ***Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).** The facts of this case fit well within the Eighth Amendment legal parameters discussed above, which uniformly dictate that Caliper be found not liable. Therefore, Caliper's motions for summary judgment (Docs. 40 and 70) are granted.

### B.  Dr. Marvin Powers

In his affidavit (Doc. 78, Exhibit 1), Dr. Powers explains his medical judgment that surgery is not appropriate, and that it may not even achieve the result Champs' anticipates. Champs asserts that Dr. Powers is merely offering his personal opinion. Not only is that assertion contradicted by Powers' affidavit, Champs offers no professional medical evidence to contradict Dr. Powers' opinion. Obviously, the opinion of a physical therapist does not trump that of a licensed

10

medical doctor. However, even viewing the physical therapist's opinion that Champs needs surgery as evidence of a difference of medical opinion regarding treatment, a mere difference of opinion, medical negligence, and even malpractice do not establish deliberate indifference. ***Johnson v. Doughty*, 433 F.3d 1001, 1012-1013 (7th Cir. 2006).**

Inmates are entitled only to "adequate medical care." ***Boyce v. Moore*, 314 F.3d 884, 888-889 (7th Cir. 2002);** *see also Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).** The undisputed evidence reflects that Champs has been examined by Dr. Powers approximately 16 times and prescribed Motrin, which hardly suggests deliberate indifference. Even if Champs should have had surgery or stronger medication, "a medical professional's erroneous treatment decision can lead to deliberate indifference liability if the decision was made in the absence of professional judgment." ***Johnson v. Doughty*, 433 F.3d at 1013;** *see also Collignon v. Milwaukee County*, **163 F.3d 982, 989 (7th Cir. 1998).** As discussed above, Dr. Powers' affidavit reflects that he made his treatment decision based on his medical judgment. Finally, at this juncture, Champs' unsupported assertion that Dr. Powers' medical decisions were based on financial considerations does not create a material question of fact for trial (as was the situation in *Johnson v. Doughty*). ***Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).** Therefore, Dr. Powers' motion for summary judgment (Doc. 78) is granted.

### C. Joe Champs

Having found that both Terry Caliper and Dr. Marvin Powers are entitled to summary judgment, Plaintiff Champs' motion for summary judgment (Doc. 62), obviously, must fail. The undisputed facts simply do not rise to the level of deliberate indifference, and there is nothing to reasonably suggest that Terry Caliper or Dr. Powers were acting so inappropriately as to permit the

11

inference that they intentionally or recklessly disregarded Champs' serious medical needs. *Hayes v. Snyder*, **546 F.3d 516, 523-24 (7th Cir. 2008).** Champs has not produced anything to create a material question of fact for trial. Therefore, Champs' motion for summary judgment (Doc. 62) is denied.

### 3. Conclusion

In light of the foregoing, Judge Proud's Report and Recommendation (Doc. 96) is **ADOPTED in its entirety**; Defendant Terry Caliper's two motions for summary judgment (Docs. 40 and 70) and Dr. Marvin Powers' motion for summary judgment (Doc. 78) are **GRANTED**; and Plaintiff Joe Champs' motion for summary judgment (Doc. 62) is **DENIED**. The Clerk of Court shall enter Judgment in favor of all defendants and against Plaintiff Joe Champs. This case is closed.

**IT IS SO ORDERED.**

**DATED: March 16, 2011**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**